Argued March 10, affirmed July 23, 1958

MELGREEN ET UX *v.* McGUIRE, INC. ET AL

327 P. 2d 1114

*Carlton R. Reiter*, Portland, argued the cause for respondents. On the brief were Stern, Reiter & Day, Stanley J. Mitchell and Harry A. Harris, Portland.

*F. M. Phelps* and *Clifford E. Nelson*, Portland, argued the cause for appellants. On the brief were Phelps, Burdick and Nelson and Arthur E. Prag, Portland.

Before PERRY, Chief Justice, and ROSSMAN, LUSK and McALLISTER, Justices.

McALLISTER, J.

The plaintiffs, Bart Melgreen and Annie Melgreen, his wife, brought this action in deceit to recover damages from the defendants, Frank L. McGuire, Inc., a real estate broker, and T. J. Rogoway, its salesman, alleged to have resulted from fraudulent representations made by the defendants inducing plaintiffs to exchange their equity in a motel for 15 pair of chinchillas and a house trailer. The jury returned a verdict for plaintiffs in the sum of $6,000 and from the judg-

ment based thereon, both defendants appeal. The defendant, Frank L. McGuire, Inc., is a corporation with its office in Portland and will be referred to herein as "McGuire."

The defendants joined in ten assignments of error contending that the court erred in refusing to grant their motions for a nonsuit and for a directed verdict, in submitting one of the charges of fraud to the jury, in receiving certain testimony and in giving and refusing to give certain instructions.

Although the testimony is in sharp conflict there was evidence tending to prove the following facts. In 1953, the plaintiffs were the owners of an equitable interest in a motel near Dundee which they were purchasing under a contract of sale. For reasons not necessary to relate here, the plaintiffs were in financial difficulty and in danger of losing the motel because of their inability to pay the monthly installments of the purchase price. The plaintiffs had purchased the motel and another piece of real property through the McGuire agency and were well acquainted with Rogoway who had handled both transactions.

Early in 1953 the plaintiffs had listed the motel for sale with McGuire through another salesman employed by the agency who attempted for several months to sell the property without success. The plaintiffs called at McGuire's office from time to time to inquire about the prospects for sale of the motel and on one or more of these occasions were told by Rogoway that he thought he could sell the motel for them. The prior listing had expired and as a result of these conversations plaintiffs on October 1, 1953 again listed the property with McGuire through Rogoway.

After the listing had been signed, Rogoway told plaintiffs that he could arrange a trade of their equity

in the motel for 15 pair of chinchillas and a house trailer. The chinchillas had been listed for sale with McGuire by I. E. Dill and Trudy Dill, his wife, for a price of $12,000. According to the plaintiffs' testimony they told Rogoway that they knew nothing about chinchillas, did not want the animals but wanted and were in dire need of cash. Plaintiffs testified that Rogoway told them in substance that he was experienced in dealing with chinchillas, that the animals were worth $12,000 and that he could sell them for plaintiffs and thus raise the cash needed by plaintiffs.

Rogoway submitted to plaintiffs a contract on a printed form providing for the sale of the motel to the Dills for a price of $29,500. The contract required the Dills to pay the purchase price by assuming a $14,000 balance owing on the motel by plaintiffs and by transferring to plaintiffs a house trailer at a price of $3,250 and 15 pair of chinchillas at $800 per pair, or a total price of $12,000. The plaintiffs did not sign the contract but went home to think about the proposed trade.

In a day or two plaintiffs returned and went with Rogoway to the office of their attorney, Dan Hartley. The attorney, who had himself previously made a disappointing investment in chinchillas, examined the contract and advised plaintiffs not to consummate the deal. Although Hartley explained in some detail why he advised against the deal the plaintiffs were not dissuaded and the conference continued. Bart Melgreen wanted to know whether there was a market for chinchillas and how the price was determined and either he or one of the others present suggested that an inquiry be made. Hartley thereupon telephoned the Powellhurst Chinchilla Ranch and asked "what a commercial grade was" and also asked "the prevailing price for chinchillas." He was advised that a commercial

grade was "85 per cent or better" and that the prevailing price of chinchillas was $850 to $1,500 per pair depending upon the grade. Hartley then related to plaintiffs and Rogoway the information acquired in response to his question. Bart Melgreen then insisted that he would make the deal only if the chinchillas graded 85 per cent or better. He said, "Well, before I will even consider a deal in any way they must then grade 85 per cent or better." Rogoway then said, "I will get them graded because I know they will grade 85 per cent or better."

After this discussion Hartley added to the provision of the contract obligating plaintiffs to accept the chinchillas at an agreed price of $12,000 the phrase "provided animals grade 85 per cent or better." He also added to the contract the following sentence, "This agreement is conditioned upon the fact that animals grade 85 per cent or better." Rogoway promised to have the animals graded and the parties left Hartley's office with the understanding that they would meet again when the grading was completed.

A few days later the plaintiffs again met Rogoway in Hartley's office and as usual, there is a sharp dispute as to what occurred. According to the plaintiffs, Rogoway said the chinchillas had been graded, that they graded 85 per cent or better and exhibited documents which he said were certificates showing the grade of the animals. The documents were handed by Rogoway to Hartley who glanced at them briefly and placed them in his file. Plaintiffs did not examine the certificates. The documents were not grading certificates but registration certificates issued by the Sovereign Chinchilla Registry showing the pedigree of the animals.

After Rogoway had delivered the certificates, plain-

tiffs signed the contract of exchange and testified that in doing so they relied entirely on the representations made to them by Rogoway. During the negotiation of the deal plaintiffs did not talk to the Dills about the chinchillas and made no inspection of the animals until after the contract was signed. There is no dispute about the value of the trailer which was turned over to the defendants to apply on commissions owed to them by plaintiffs.

For several months after the deal was closed Rogoway apparently attempted to sell the chinchillas without success. Because they were unable to sell the chinchillas the plaintiffs sustained further financial reverses not necessary to describe here. Plaintiffs finally quarreled with Rogoway over his failure to sell the chinchillas and he then refused to have anything further to do with either plaintiffs or the chinchillas. This action was then filed.

In their second amended complaint plaintiffs alleged that defendants made the following fraudulent misrepresentations:

(1) That the 15 pair of chinchillas were well worth the sum of $12,000;

(2) That said chinchillas could be immediately converted into that amount of cash;

(3) That defendants would immediately sell said chinchillas and convert them into said amount of cash;

(4) That said chinchillas were of a grade of 85 per cent or better; and,

(5) That expert chinchilla graders had graded said chinchillas at 85 per cent or better.

The court withdrew from the jury the charge that defendants fraudulently represented that they would immediately sell the chinchillas for $12,000 in cash. The

remaining four charges of fraud were submitted to the jury.

Defendants' first assignment of error reads as follows:

"The court permitted the plaintiffs, over the objections of the defendants, to introduce evidence as to the value of the chinchillas (Tr. 158)."

The above paragraph is followed by argumentative matter not properly a part of the assignment of error. No authority is cited in support of this assignment.

■ The rules of the supreme court, effective March 1, 1950 as published in 190 Or 691, are applicable to this appeal. Rule 13 (3a) requires that an assignment of error based on the alleged erroneous admission of evidence shall set forth haec verba the question asked, the objection made, the answer given, if any, with proper reference to the page of the bill of exceptions where such question and objection appear. Defendants' first assignment of error completely ignores this rule.

We decline to search the bill of exceptions, containing 560 pages, to find the questions asked regarding the value of the chinchillas and the objections, if any, made to such questions. The only objections reported on the single page of the bill of exceptions referred to in the assignment of error were made on the ground that the questions were leading. Since this assignment of error does not conform to our rules, we decline to consider it.

Defendants assign as error the denial of their motions for a nonsuit and for a directed verdict. The grounds assigned in support of these motions may be summarized as follows:

(1) That there was no substantial evidence tending to prove any of the charges of fraud;

(2) That the representations of the defendants as to value and condition of the chinchillas, if any, were merely repetition of information given defendants by the owners of the chinchillas and so understood by plaintiffs.

(3) That it affirmatively appeared from the evidence that plaintiffs had relied on their own independent investigation in making the exchange of property;

(4) That the insertion in the contract by plaintiffs of the conditions relating to the grade of the animals precluded a recovery based on any representations as to value made by defendants and left as the only issue the question as to whether the animals graded 85 per cent or better;

(5) That there was no proof that the animals did not grade 85 per cent or better; and,

(6) That there was no proof of the corporate existence of Frank L. McGuire, Inc.

██ We think that the motions for nonsuit and for a directed verdict were both properly denied. It was not necessary that plaintiffs establish that defendants had made all of the fraudulent representations alleged in their complaint. Proof of one or more of the misrepresentations alleged and the other elements necessary to constitute actionable fraud is sufficient. *Burgdorfer v. Thielemann*, 153 Or 354, 374, 55 P2d 1122. There was substantial competent evidence from which the jury could have found that Rogoway fraudulently represented to plaintiffs that the chinchillas were worth $12,000 and that he had had prior dealings in chinchillas and knew their value. No motion was made to withdraw from consideration by the jury the charge of fraud based on the alleged representation that the chinchillas were worth $12,000.

█ Defendants argue that a mere expression of opinion or belief as to value does not amount to fraud. They overlook the fact that in the case at bar the de-

fendants were real estate agents employed by the plaintiffs. This court has uniformly held that the making of fraudulent representations of value by a real estate agent for the purpose of deceiving his principal constitutes actionable fraud where the principal relies on the fraudulent representations to his damage. *Shute v. Johnson*, 25 Or 59, 34 P 965, *Burgess v. Charles A. Wing Agency*, 139 Or 614, 622, 11 P2d 811, *Richer v. Burke*, 147 Or 465, 480, 34 P2d 317. There is nothing to the contrary in *Horner v. Wagy*, 173 Or 441, 146 P2d 92 cited by defendants. In that case the court carefully pointed out that the parties were dealing at arm's length with no relationship of trust or confidence between them.

We cannot hold as a matter of law that plaintiffs relied on their own investigation rather than upon the representations of the defendants. The investigation made by plaintiffs was limited to inquiring how the quality of chinchillas was usually determined and whether there was any market for the animals. There was no evidence that any investigation was made as to the quality, condition or value of the animals owned by the Dills. The fact that plaintiffs made some investigation does not necessarily preclude them from relying on the representations of the defendants. *Larsen v. Lootens*, 102 Or 579, 592, 194 P 699, 203 P 621, *Mercer v. Parker*, 124 Or 89, 92, 262 P 948 and *Hansen v. Holmberg*, 176 Or 173, 183, 156 P2d 571. This is particularly true where the investigation was limited to an inquiry as to whether the property would be marketable if it was of the quality and condition represented. Whether the plaintiffs were precluded by such investigation as they made from relying on the representations made by the defendants was a question for the jury. *Southern Oregon Orchards Co. v. Bakke*, 106

Or 20, 26, 210 P 858, *Hansen v. Holmberg* and *Horner v. Wagy*, both supra.

■ Defendants contend that in making any statements as to the quality, condition or value of the chinchillas they were merely repeating information given to them by the owners and so advised plaintiffs. This contention, which was denied by plaintiffs, presented a question of fact for the jury.

■ The insertion into the contract of a provision that it was "conditioned on the fact that the animals grade 85 per cent or better" does not limit the plaintiffs to an action on the contract. It is the general rule that an action for deceit will lie for false representations made to induce the sale of property even though the contract contains a warranty covering the subject of the false representations. In such a case, the buyer may sue either on the warranty or on the fraud. See *Mahurin v. Harding*, 28 NH 128 (1853); *Troendly v. J. I. Case Co.*, 50 Ida 506, 297 P 1103 (1931); *Mason Gin Co. v. Continental Gin Co.*, (Tex) 43 SW2d 955 (1931); *Wells v. Oldsmobile Co.*, 147 Or 687, 691, 35 P2d 232 (1934); 24 Am Jur 24, Fraud and Deceit § 201; and 46 Am Jur 859, Sales § 734. It is obvious that if the buyer is not precluded from suing the seller in deceit by the insertion of a warranty in the contract, the buyer is not precluded from bringing an action in deceit against the real estate broker whose fraud induced him to enter into the contract. We need not consider whether the provisions inserted in the contract by plaintiffs may properly be called warranties since, in any event, they do not limit the plaintiffs to an action on the contract.

■ Defendant Frank L. McGuire, Inc. contends that the motion for directed verdict should have been allowed because no evidence was offered to prove the corporate existence of said defendant. In its answer

McGuire alleged that it was a corporation duly licensed to do business in Oregon as a real estate broker. In view of this allegation no proof on this point was necessary. See *Hartford Ins. Co. v. Central R.R.*, 74 Or 144, 150, 144 P 417.

■ By the remaining ground assigned in support of their motion for directed verdict, defendants contend that there was no proof that the chinchillas did not grade 85 per cent or better. As heretofore pointed out, the failure to prove one alleged misrepresentation would not entitle defendants to a directed verdict if there was sufficient proof of one or more other misrepresentations alleged. In any event, as hereafter pointed out, we think there was sufficient evidence to justify the submission of this issue to the jury. We conclude that the motions for nonsuit and directed verdict were properly denied.

The defendants also assign as error the denial of their motion to withdraw from the jury the issue as to whether the chinchillas graded 85 per cent or better. A disposition of this assignment requires a further brief discussion of the evidence.

The provisions inserted in the contract by plaintiffs referred to a system of grading known as the Universal Scoring System used by some chinchilla breeders in which the relative quality of the animals is scored numerically based on the color, volume, nap and texture of the fur and similar characteristics. The extent to which this grading system is used is not clear but apparently it is not used by all chinchilla breeders. It does appear that the characteristics of the animal used to determine its quality under the Universal Scoring System are the same characteristics that would be used to determine its quality by any expert. The plaintiffs did not have the animals graded under the Universal Scoring System at any time.

A chinchilla breeder called by the defendants testified that the Universal Scoring System was used to determine the quality of the animals graded and that to be "merchantable and marketable" a chinchilla should grade 85 per cent or better. A chinchilla breeder called by the plaintiffs as an expert witness testified that he inspected the animals in question in February 1954 and that in his opinion the animals were worthless. He further testified that there would have been no substantial change in the quality of the animals from October 1953 to the date of his inspection and that, in his opinion, the animals were worthless in October. He testified that in the best of condition the animals "would be worthless either as pelts or breeding stock."

We think this evidence that the animals were of such poor quality as to be worthless for any commercial purpose was sufficient to support a finding of the jury that the animals were not of a merchantable quality under the Universal or any other scoring system. The credibility of the witness and the weight to be given his testimony were questions for the jury.

■ By their assignments of error numbered VI and VII, the defendants objected to the giving of certain instructions to the jury. These assignments of error do not comply with the rules of this court and for that reason we decline to consider them.

By their assignments of error numbered VIII, IX and X, the defendants contend that the court erred in failing to give certain requested instructions. We have examined the requested instructions and are satisfied that the court did not err in failing to give them.

Affirmed.

PERRY, C. J. did not participate in the decision of this case.