Argued February 5, affirmed as modified March 18, 1964

# LIGGETT *v.* LESTER

### 390 P. 2d 351

*Jerome L. Noble* and *Philip Hayter,* Dallas, argued the cause for appellant. With Noble on the brief were Hayter & Shetterly, Dallas.

*R. W. PicKell,* Salem, argued the cause and filed a brief for respondent.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and LUSK, Justices.

GOODWIN, J.

This is an appeal from a decree entered in a suit for dissolution of a partnership. Accounting and winding up were ordered pursuant to ORS 68.590 and 68.650.

The plaintiff, George H. Liggett, and defendant, Odell Lester, entered into a written partnership agree-

ment on January 3, 1957, for the purpose of conducting a service-station business in Dallas, Oregon. The partnership acquired from Lester and his wife a service-station business theretofore operated by them. The partners thereafter operated the station under the firm name of "Les' Sav-Mor Service" until April 26, 1958. On that date the station was closed because of a disagreement over certain billing practices employed by Lester.

Prior to the formation of the partnership, Lester had obtained from an oil company a "distributorship" classification which permitted Lester to buy petroleum products at a discount. The partners contemplated that Lester's ability to purchase at favorable prices would be an advantage in their business.

Throughout the life of the partnership, Liggett had entrusted Lester with payment of the firm's bills. The testimony showed that the partners deemed this arrangement necessary in order to take advantage of Lester's status as distributor.

Shortly after the formation of the partnership, Lester, in his own name and on his own account, became the operator of a bulk plant, also in Dallas, for the handling of large volumes of petroleum products for wholesale consumers. Thereafter, the bulk plant intervened between the oil company and the partnership as nominal supplier of petroleum products to the partnership, although tank-wagon deliveries continued to be made by the oil company directly to the partnership station. Billing was assumed by the bulk plant. There is evidence that Liggett was aware of this change. Unknown to Liggett, however, was another fact. Concurrently with the operation of his bulk plant, Lester arranged with the oil company to

receive an additional discount as a "jobber." This discount ranged from one cent per gallon to one and a half cents. He did not pass it on to the partnership. (On questioning by the court, Lester admitted that he had never informed Liggett of this extra discount.)

A dispute over Lester's billings to the partnership arose when Liggett discovered Lester's secret profit-taking. Lester thereupon closed the station and excluded Liggett from the business.

The trial court ordered Lester to account to the partnership for the profits he had made on sales to the partnership. The court appointed a referee to compute the amount of "all profits made by the defendant on merchandise sold * * *." The referee subsequently reported that Lester had sold to the partnership gasoline, diesel, oil and supplies for $2,057.31 "in excess of his cost."

The court settled accounts between the partners and ordered Lester to account to the partnership for the sum of $2,105.35, with interest, as well as to pay the costs of the referee's services, totaling $700, with interest.

Lester now contends that the trial court erred in adopting the referee's report. His argument is that the sale of merchandise to the partnership through operation of the bulk plant did not fall within the scope of ORS 68.340 (1), which provides:

"Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property."

Lester points out that the partnership was not deprived of its customary discount of three cents a gallon. He argues that the additional price concession to him personally represented a reasonable return upon his investment in the bulk plant, and that there was no fraud or misuse of partnership credit.

Further, Lester challenges the trial court's finding that Liggett did not know of the additional profits being received by Lester. Lester also contends that there was no showing that the partnership could have financed a bulk-plant operation, and that such an operation was necessary in order to obtain the extra discount. He argues that there was, therefore, no evidence that Lester's profits were of a kind that could have accrued to the partnership even if he had made a full disclosure to Liggett. Finally, Lester argues that the only "connection" between the bulk plant and the service station was the fact that the former handled the paper work on the sales of petroleum products to the latter.

We find little merit in any of these attempts to explain away the secret profits.

There is sufficient evidence in the record to support the trial court's finding that "without plaintiff's knowledge, defendant secured and entered into in defendant's name a contract with Time Oil Company whereby defendant secured a price advantage in the purchase of petroleum products." We have examined the record independently, as we are required to do in all equity cases. *Roberts v. Mariner,* 195 Or 311, 348, 245 P2d 927 (1952). We reach the same conclusions as those reached below.

The conduct of Lester in concealing his additional profit on purchases made for the partnership

constituted a breach of a fiduciary duty one partner owes another. Lester's profits on such purchases amounted to secret commissions wrongfully withheld from his partner. *Shulkin v. Shulkin,* 301 Mass 184, 16 NE2d 644, 118 ALR 629 (1938).

The rule which requires an accounting for secret profits applies to commissions and discounts secretly obtained by a partner on purchases made by him for the firm. 1 Rowley, Partnership 532, § 21.1 (2d ed 1960). It was Lester's duty to obtain petroleum products for the partnership at the best price possible. Lester's duty in this regard is not changed by the fact that he might not be subject to an accounting for secret discounts on sales from his bulk plant to third parties.[1] That matter is not before us. It likewise matters not that the partnership paid no more for its merchandise than it would have had to pay on the open market for the same purchases. See *Victor Oil Co. v. Drum,* 184 Cal 226, 193 P 243 (1920) (fiduciary duty of a promoter). The breach of duty was the failure to disclose the existence of the extra discount so that the partners could decide, as partners, how it should be treated. Because of the relatively thin margin of profit in the service-station business, the extra cent (or cent and a half) per gallon represented a relatively substantial benefit.

It is true, as Lester argues, that a partner may engage in enterprises in his own behalf while he is a

[1] It is unnecessary for this court to decide whether, under the facts of this case, there would have been an unfair trade practice if the partnership had enjoyed the additional discount as a jobber or wholesaler without changing its status as a service station. See, e.g., ORS 646.060 (prohibiting commissions, allowances or discounts except for service rendered); Robinson-Patman Antidiscrimination Act, ch 592, §§ 1, 3, 49 Stat 1526, 1528 (1936), 15 USC §§ 13-13a (1958).

member of a partnership, provided that he acts in good faith toward the other partners. *Powell v. Powell,* 181 Or 675, 704, 184 P2d 373 (1947). This qualified right to engage in other business, however, is further qualified and limited where the separate business is of the same nature as that engaged in by the partnership. In such a case the consent of the other partners must be obtained before one partner may engage in a competitive enterprise. *Crownfield v. Phillips,* 125 Md 1, 92 A 1033 (1915). And see *Fouchek et al v. Janicek,* 190 Or 251, 273, 225 P2d 783 (1950) (duty to share business opportunity with partners).

■ Although Liggett was aware of Lester's bulk-plant operation, it is clear that Lester failed to disclose the additional discounts he was receiving on the sales to the partnership. Lester not only failed to offer his partner an opportunity to share in the discount, but he tried to keep Liggett from learning of it. Liggett discovered this state of affairs by chance. Lester cannot rely upon the foregoing right to engage in other business since Liggett's consent was not truly obtained.

■ In this appeal Lester also contends that the referee improperly computed the profits on the sales to the partnership. Lester argues that the referee should have deducted from the $2,057.31 "profit" the costs of operation of Lester's bulk plant. In his amended accounting, Lester introduced his federal tax returns to show that he had sustained a loss during the period in question. The referee was not, however, required to give Lester any credit for losses he may have suffered. All his tax returns proved was that without the secret profits he would have lost more money than he did lose. The sales to the partnership did not go through the bulk plant, except on paper, and there is

no showing that the losses suffered in the bulk plant were in any way related to the secret discounts Lester obtained on merchandise sold to his partnership. In any event, a secret benefit may include the advantage of being saved from expense or loss. See *Lawrence Warehouse Company v. Twohig,* 224 F2d 493 (8th Cir 1955).

■ Counsel directs our attention to cases which hold that the defaulting partner is accountable to the partnership only for the net profit earned through his faithless conduct. See, e.g., *Watson v. Kellogg,* 129 Cal App 592, 19 P2d 253 (Ct App 1933) (profit on unauthorized sale of partnership property); *Caveney v. Caveney,* 234 Wis 637, 291 NW 818 (1940) ("net avails" of unauthorized dealings in partnership property). These cases are distinguishable from the present case. They involve dealings with third parties. In such cases, it is only the net profit that is relevant. The case at bar, however, involves purchases for the partnership resulting in secret commissions or discounts. Where a secret discount is withheld by one partner on purchases which he has made on behalf of the partnership, the entire amount of the discount must be accounted for. See Restatement, Restitution § 197 (1937).

■ Another assignment of error challenges the trial court's decree that Lester should pay the entire referee's fee of $700, with interest thereon. There was no abuse of the court's discretion in so ordering. *Fleming v. Carson,* 37 Or 252, 255, 62 P 374 (1900) (per curiam). If Lester had dealt fairly with his partner the expense would not have been incurred.

Lester also challenges the finding that he should account for an asset called "business rights" valued

at $500. The phrase "business rights" is found in a "bill of sale" executed at the same time the partnership was formed. It followed a lengthy list of specific assets of the service station including a separate entry for "good will." The phrase "business rights" was not defined either in the bill of sale or in the articles of partnership. On the record, the trial court could have treated Liggett's share of the $500 as the present value of an original contribution to capital made by Liggett. We find nothing in the record to warrant a recomputation of the item in this court.

In another assignment of error, it is contended that the court erred in charging Lester with six per cent interest on Liggett's share in the total partnership assets, from April 26, 1958. Ordinarily, interest is not chargeable in an accounting by one partner to another. 1 Rowley, supra at 548. Nevertheless, the trial court may, in its discretion, add interest to the share owed by a partner guilty of a fiduciary breach, *Shulkin v. Shulkin,* 301 Mass, supra at 194-195, or of improper use of partnership funds. *Jewell v. Harper,* 205 Or 1, 10, 285 P2d 133 (1955) (dictum).

In this case it is equitable to allow the aggrieved partner interest on his half of the profits that had been wrongfully withheld from the partnership. This would amount to the interest on $1,028.66 from April 26, 1958. The trial court allowed interest on one-half of the total partnership assets. That was too generous. The decree should be modified. In addition to partial relief from the payment of interest, Lester is entitled to have $97.16 deleted from the accounting approved in the decree. There was no evidence that an account receivable in that amount had any value. Accordingly, it was not proper to charge Lester with the item.

The trial court's decree should be modified by deleting $97.16 from the assets to be accounted for by Lester, and by reducing to $1,028.66 the balance of the partnership assets subject to interest. In all other respects the decree is affirmed.

Affirmed as modified; costs to neither party.