Argued October 12, affirmed October 27, 1972

TRIP, *Appellant, v.* BARKDOLL, *Respondent.*

502 P2d 219

*Hardy Myers, Jr.,* Portland, argued the cause for appellant.

*Joseph W. Glaze,* Portland, argued the cause and filed a brief for respondent.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is an action by a realtor for $50,000 in profits allegedly lost as the result of the termination by defendant of an exclusive "net price" listing agreement for the sale of two motels owned by defendant. Defendant's answer alleged, as an equitable defense, that plaintiff, as a real estate broker, breached his fiduciary duty to defendant both before and after the execution of the listing agreement. The trial court agreed and entered findings of fact to that effect. We affirm.

Plaintiff, as a realtor, specialized in exchanges of commercial property. In 1965 defendant, the owner of 25 acres of unimproved land near the Troutdale Airport, responded to one of plaintiff's advertisements and listed it for sale by plaintiff for some $63,000.

Plaintiff then prepared a "package" on the property and presented it to a meeting of a realtor's "exchange club."

As a result of plaintiff's efforts, the Golden Rule Realty Company ("GRR") became interested in purchasing the property with third party promissory notes secured by trust deeds on Nevada property. A sale was then consummated on that basis. No one checked the validity of the trust deeds, defendant being unfamiliar with them and plaintiff relying upon the escrow company to check them on closing the transaction. However, because plaintiff was not familiar with trust deeds and apparently had some doubts about GRR, he required defendant to give him a "hold harmless" agreement. As a commission plaintiff accepted a $4,000 note from GRR and a Thunderbird car from defendant which, along with the Troutdale property, was subject to a bank lien which GRR was to pay off.

Before that transaction was closed, however, plaintiff undertook negotiations on behalf of GRR which resulted in an exchange of the Troutdale property (being purchased by GRR from defendant) to Associated Thrift and Securities, Inc. (AT) for two motels in Portland—the Sixth Avenue Motel and the Fourth Avenue Motel (or Saharan). Plaintiff was engaged by GRR to investigate other properties on its behalf and also sold to GRR property owned by him in Klamath county.

As compensation for his services to GRR plaintiff received from it a promissory note for $50,000 secured by an assignment of GRR's interest as a purchaser of the Sixth Avenue Motel from AT. Plaintiff testified that the arrangement was also intended to provide additional security for the sale of his interest

in the Klamath property and for the $4,000 note for commission on the Troutdale property.

In early 1965 GRR failed to make payments to defendant on the notes secured by the trust deeds and also defaulted in payments due to AT, which then filed foreclosure proceedings on the two motels, naming both GRR and plaintiff as defendants.

Defendant then undertook negotiations with AT for the acquisition of GRR's interest in the motels as a means of recouping his loss from his sale of the Troutdale property to GRR. Defendant was not able to complete those negotiations, however, without making some arrangement with plaintiff because of the interest claimed by him in the Sixth Avenue Motel.

At that time plaintiff had filed no appearance in the foreclosure proceedings and the taking of a foreclosure decree by AT against GRR and plaintiff was imminent. When taken, plaintiff's only interest in the Sixth Avenue Motel would have been a right of redemption and the evidence was not convincing that he could have raised the funds to do so, although he testified that he could have borrowed such funds.

Plaintiff then informed defendant that he had a $50,000 security interest in the Sixth Avenue Motel and would not release that interest so as to make possible a completion of the arrangement for the sale by AT to defendant of its interest in both motels unless plaintiff could assure himself that he would be paid. For that purpose plaintiff told defendant that what he wanted, in addition to a $4,000 note, was an exclusive listing for six months for the sale of both motels on a "net price" basis, under which plaintiff would retain the entire sales price in excess of the listed price of $210,000 for the Sixth Avenue Motel and of $200,000

for the Fourth Avenue Motel. At plaintiff's request, and in order to clear plaintiff's claim of interest in the Sixth Avenue Motel, defendant signed both the note (which defendant later paid), and the listing agreements.

Defendant testified that although he knew at that time that AT was foreclosing GRR's interest in the motels and that plaintiff claimed some interest in the Sixth Avenue Motel, he did not know the nature of such interest. He also testified that he did not know, and that plaintiff did not tell him, that plaintiff was a defendant in the foreclosure suit and had not filed an appearance and was about to have his interest foreclosed. In addition, he testified that he would not have signed either the $4,000 note or the exclusive listing agreement had he been informed of these facts, but would have waited the few days remaining before plaintiff's interest was foreclosed.

The listing agreements were dated June 20, 1966. A day or two later plaintiff signed a consent to the entry of a foreclosure decree and also a quitclaim deed to GRR. Plaintiff then contacted several realtors in an effort to negotiate a sale of the motels. In July 1966 one realtor, a Mr. Bucher, expressed interest in the Sixth Avenue Motel and gave plaintiff a written proposal at a price of $225,000 on a "buy-back" arrangement involving other real property. That proposal, however, had a "weasel clause," so as not to be a binding offer.

Defendant testified that he called plaintiff several times "to see what was going on" and that while plaintiff may have said that he had a prospect or an offer, he never reported to him the details of the offer by Mr. Bucher or the amount of that offer. Defendant

also testified that his last conversation with plaintiff was about a month before he terminated the listings. Mr. Bucher testified that although he was interested in pursuing the matter, plaintiff did not do so and that it "died" for lack of interest by plaintiff.

Plaintiff testified that the price offered by Mr. Bucher was $225,000, which "wasn't what I was after; I was after $250,000," and that although he did not talk to defendant for a period of at least 30 days prior to October 2, 1966, he called defendant on that date (the day before defendant terminated his listings) and told defendant that he expected to transmit a written offer on the Sixth Avenue Motel within 48 hours.

Defendant testified, however, that plaintiff did not call him on October 2, 1966, as plaintiff testified, and that had plaintiff done so he would not have written the letter, but would have awaited the promised offer—which never was submitted. Nor was there any evidence that plaintiff had any such prospective offer then in process of negotiation or that he had any reasonable expectation of receiving such an offer at that time.

Defendant's letter stated that the listings were terminated because it had been "determined" that the motels could not be sold at the listed prices. Although there was no evidence of any such specific determination, he was apparently discouraged by the fact that no offer had been received under the listing agreements. He also testified that the reason for the termination was that no offer had been received and that with the winter season approaching and the motels in a run-down condition, he decided to spend some $15,000 in improvements and did not want to do so and then be bound to sell them at the listed prices, with all excess payable to plaintiff.

Plaintiff offered testimony of another realtor that the motels were worth the listed prices and probably could have been sold at such prices within the remaining two months of the listing. Defendant offered evidence to the contrary.

■ ■ The trial judge, after hearing the testimony without a jury, made a finding of fact that both before and after the execution of the listing agreements plaintiff was "guilty of conduct on numerous occasions which violated and breached his fiduciary relationship with defendant in that he failed to make a full, fair and frank disclosure of all the facts within his knowledge relating to defendant's property" and that "[t]his conduct voided the legal efficacy of the listing agreements," making it unnecessary to consider whether there was sufficient evidence of damages for its alleged breach.

This being an equitable defense to an action at law, we have reviewed the record de novo and agree with these findings by the trial court.

In *Prall v. Gooden et ux*, 226 Or 554, 561, 360 P2d 759 (1961), we held (at p 561) that:

> "It also must be kept in mind that a real estate broker stands in a fiduciary relationship with his customer or client and is thus bound to protect his clients' interests. He must, therefore, make a full, fair and understandable explanation to the client before having him sign any contracts, particularly when those contracts are with the broker himself. * * *"

See also *Sexton v. Kelly*, 185 Or 1, 9, 200 P2d 950 (1948).

■ We also held in *Prall* (at pp 563-4) that conduct by a real estate agent which amounts to a breach of

his fiduciary duty to protect his clients' interests and to make a full, fair and understandable explanation to his client before having him sign any contract, particularly one with the broker himself, is a complete defense in an action by the broker for compensation for services to his client. See also *Melgreen et ux v. McGuire, Inc. et al*, 214 Or 128, 137, 327 P2d 1114 (1958), and *Burgess v. Charles A. Wing Agency*, 139 Or 614, 623, 11 P2d 811 (1932).

After examining the record in this case we agree with the finding of fact by the trial judge that in negotiating the listing agreements plaintiff failed to make a full, fair and frank disclosure of all of the facts relating to the two motels in that there was evidence from which the trial court could properly find that plaintiff failed to disclose the limited nature of his claimed interest in the Sixth Avenue Motel, which was then about to be foreclosed. There was also evidence that plaintiff failed to report any details relating to the Bucher offer for that motel, even though not a binding offer. Instead of seeking to protect the interests of defendant as his client, as it was plaintiff's duty to do, his primary concern was to protect his own interests.

Having found that plaintiff failed to perform his fiduciary duty to defendant as his client, we also conclude, as did the trial court, that it is not necessary to consider whether plaintiff offered sufficient evidence to sustain his claim of lost profits.

■ Defendant has cross-appealed, assigning as error that "[t]he lower court erred in not awarding attorneys' fees in favor of the defendant." Thus, defendant contends that ORS 20.096, which became effective after the execution of the listing agreements and which

provides that a unilateral contract provision for attorney fees must be given a mutual application to both parties to the contract, should be declared by this court to apply retroactively in this case.

It does not appear from defendant's assignment of error, however, how this contention was raised and ruled upon in the trial court, as required by Rule 2.35 of the Rules of Procedure of the Oregon Supreme Court. It also appears that no request for attorney fees was made by defendant in the trial court until after the entry of final judgment. Compare *State High Com. et al v. Kendrick et al,* 227 Or 608, 610-11, 363 P2d 1078 (1961), with *State ex rel Nilsen v. Adams,* 248 Or 269, 279-82, 431 P2d 270, 433 P2d 831 (1967).

For these reasons we decline to consider defendant's cross-appeal.

Affirmed.