Argued February 4, affirmed as modified March 13, 1975

STARR ET AL, *Respondents, v.* INTERNATIONAL
REALTY, LTD., ET AL, *Appellants.*

533 P2d 165

*Dennis H. Elliott,* Portland, argued the cause for appellants International Realty Ltd., Stanley G. Harris and Kaaren L. Harris. With him on the briefs were John J. Haugh and O'Connell, Goyak & Haugh, P.C., Portland.

*Herbert H. Anderson,* Portland, argued the cause for respondents. With him on the briefs were John M. Berman and Dezendorf, Spears, Lubersky & Campbell, Portland.

Before MCALLISTER, Presiding Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON,* Justices.

* Bryson, J., did not participate in this decision.

TONGUE, J.

This is a suit by the partners in a real estate venture to require the realtor and promoter of the venture, who was also a partner, to account to the partnership for the commission received by him as the realtor without consent of the remaining partners and to hold in trust for the partnership the vendor's interest in the real estate purchased, which he also acquired without their consent. Defendants appeal from an adverse decree and plaintiffs cross-appeal from other portions of that decree.

The case involves a group of prominent Portland doctors and others in high income tax "brackets" and in need of "tax shelters." They were persuaded by one Stanley G. Harris, a Portland "expert" in real property investments, that by investing $285,000 and joining with him in a partnership for the purchase of an apartment house then under construction, the entire down payment of $265,000 could be treated for federal income tax purposes as "prepaid interest," thereby saving large amounts otherwise payable in income taxes.

It would serve no useful purpose to summarize the entire transaction for the purchase of this property for the sum of $1,010,000, in all of its details, as "put together" by Harris. Suffice to say that we have reviewed the lengthy transcript of the testimony of some 21 witnesses, together with 94 exhibits, and agree with the trial court in its findings that Harris did not reveal to his partners that the property could have been purchased for $907,500 "net" to the seller (including $207,500 to the seller to "cash [him] out of the transaction" and the assumption of a $700,000

mortgage), and that a commission of $100,000, together with an escrow fee of $2,500, was to be paid to International Realty Ltd., of which Harris was president, or that Harris had made an agreement with the seller of the property under which International or Harris would acquire the vendor's interest in the contract under which the property was being purchased by the partnership.

1. *Defendants' failure to disclose the receipt of the broker's commission.*

In *Liggett v. Lester,* 237 Or 52, 58, 390 P2d 351 (1964), although under different facts, we stated that:

> "The rule which requires an accounting for secret profits applies to commissions and discounts *secretly obtained* by a partner on purchases made by him for the firm. 1 Rowley, Partnership 532, § 21.1 (2d ed 1960). It was Lester's duty to obtain petroleum products for the partnership at the best price possible. * * *" (Emphasis added)

and (at 60):

> "* * * The case at bar * * * involves purchases for the partnership resulting in *secret commissions* or discounts. Where a secret discount is withheld by one partner on purchases which he has made on behalf of the partnership, the entire amount of the discount must be accounted for. See Restatement, Restitution § 197 (1937)." (Emphasis added)

To the same effect, see Crane and Bromberg on Partnership 389-90, § 68 (1968); and Gilmore, Handbook on the Law of Partnership 374-75, § 129 (1911). The question to be decided in this case, however, is whether the $100,000 commission paid to International, of which Harris was the president, was a "secret" commission.

Defendants contend that the broker's commission paid to International was not "secret" or "concealed"; that "explicit consent" is not required; and that "sufficient disclosure" was made "through documents, through the plaintiffs' general knowledge of the general manner in which real estate transactions are conducted, and through specific conversations * * *." Defendants "do not contend that plaintiffs explicitly and expressly consented to the commission."

It appears from the testimony that most of the plaintiffs knew or should have known that Harris and International were in the real estate business and that a realtor's commission in some amount would normally be paid to some realtor on this transaction. Apparently, because their interest in the income tax advantages of the transaction was so dominant and overriding, the doctors did not inquire whether such a commission would be paid to Harris or to International, or in what amount, and Harris did not tell them. It is contended by the doctors, however, that in this case they are entitled to the benefit of the equivalent of a rule more familiar to them in the practice of medicine—that of "informed consent."

In *Liggett v. Lester, supra,* we also said (at 59):

"Although Liggett was aware of Lester's bulk-plant operation, it is clear that Lester failed to disclose the additional discounts he was receiving on the sales to the partnership. Lester not only failed to offer his partner an opportunity to share in the discount, but he tried to keep Liggett from learning of it. Liggett discovered this state of affairs by chance. Lester cannot rely upon the foregoing right to engage in other business since Liggett's consent was not truly obtained."

It is contended by defendants that *Liggett* is

not controlling because the defendant in that case "actively attempted to keep his partner from learning of the discount." In our view, however, the rule as stated by this court in *Liggett* is not limited to cases involving "active attempts" to conceal.

ORS 68.340(1) provides:

"Every partner must account to the partnership for *any benefit,* and hold as trustee for it any profits derived by him *without the consent* of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property." (Emphasis added)

See also Restatement of Restitution §§ 190, 191.

In *Fouchek et al v. Janicek,* 190 Or 251, 262, 225 P2d 783 (1950), we said that this section from the Uniform Partnership Law states "the essence of the fiduciary [duty] of a partner," as stated by Justice Cardozo in *Meinhard v. Salmon,* 249 NY 458, 463, 164 NE 545, 62 ALR 1 (1929), as follows:

"Joint adventurers, [and] copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that

trodden by the crowd. It will not consciously be lowered by any judgment of this court."

Real estate brokers are subject to potential conflicting interest in many transactions. Even when a real estate broker does not become a partner in a venture involving the purchase of property this court has held that he owes a fiduciary duty to protect his client's interests and also "to make a full, fair and understandable explanation to his client before having him sign any contract." See *Trip v. Barkdoll,* 263 Or 325, 332, 502 P2d 219 (1972), and cases cited therein.

■■ When, as in this case, a real estate broker undertakes to join as a member of a partnership or joint venture in the purchase of real property on which he holds a listing, he is also subject to the fiduciary duties of undivided loyalty and complete disclosure owed by one partner to another. Indeed, one of the fundamental duties of any partner who deals on his own account in matters within the scope of his fiduciary relationship is the affirmative duty to make a full disclosure to his partners not only of the fact that he is dealing on his own account, but all of the facts which are material to the transaction. As held in *Duniway v. Barton,* 193 Or 69, 78, 237 P2d 930 (1951), although not involving a partnership, a fiduciary has a duty "not only not to misrepresent," but to "disclose * * * fully all the material facts * * * within his knowledge * * *." See also Restatement 2d on Trusts 67, § 2, comment *b.*

■ It follows that the "consent of the other partners" required by ORS 68.340(1) before any partner may retain "any benefit" from "any transaction connected with the formation [or] conduct" of a partnership must necessarily be an "informed consent" with

knowledge of the facts necessary to the giving of an intelligent consent.

■ In this case, Harris did not inform plaintiffs or disclose to them the fact that this property could have been purchased for $907,500 "net" to the seller or that upon its purchase for $1,010,000 Harris or International (of which Harris was the president) would be paid a commission in the amount of $100,000. In the absence of such a disclosure there could be no effective "consent" by plaintiffs to the payment or retention by Harris of any such "benefit" from that transaction, for the purposes of ORS 68.340(1).

For these reasons we must reject defendants' contention that the broker's commission paid to International was "neither secret nor concealed."[1] For the same reasons, the trial court did not err in requiring defendants to account to the partnership for that commission.

2. *Defendants' failure to disclose the agreement to receive an assignment of the vendor's interest in the sales contract.*

Defendants make no contention that they originally informed plaintiffs of the agreement by which the vendor's interest in the contract under which this property was being purchased by the partnership would be assigned to International. Defendants contend, however, that in 1970 Harris "spoke with each of the partners except [one] about possible acquisition of the vendor's interest" and that "none of the partners expressed any desire to purchase the interest, even

---

[1] Defendants have cited cases from other jurisdictions. We have read those cases but believe them to be contrary to the rule as previously established by the decisions of this court and as stated above.

though Harris apparently offered it at a substantial discount." Defendants also cite cases from other states in support of the contention that "a partner may purchase the fee to the property which the partnership has leased, provided he practices no deception or fraud upon his co-partners."

■■ Again, we consider the better rule, and the established rule in Oregon to be that the absence of "deception or fraud" is not sufficient to justify a partner in acquiring such an interest in property being purchased under contract by the partnership. On the contrary, we hold that the acquisition by International (and subsequently by Harris and his wife) of the vendor's interest in the property being purchased under contract by the partnership of which Harris was a member was a "benefit" that was "connected with the formation [and] conduct" of the partnership and was subject to ORS 68.340(1), so as to require "consent" by the other parties and so as also to be subject to the duty of full disclosure to the same extent as the receipt of the commission on the sale, as previously discussed.

The same result also follows under established rules of agency. Thus, as stated in Restatement 2d of Agency 208-09, § 390, comment *a*:

"One employed as agent violates no duty to the principal by action for his own benefit *if he makes a full disclosure of the facts* to an acquiescent principal and takes no unfair advantage of him. Before dealing with the principal on his own account, however, *an agent has a duty, not only to make no misstatements of fact, but also to disclose to the principal all relevant facts fully and completely.* A fact is relevant if it is one which the agent should realize would be likely to affect the judgment of the principal in giving his consent to

the agent to enter into the particular transaction on the specified terms. Hence, the disclosure must include not only the fact that the agent is acting on his own account \* \* \* but also all other facts which he should realize have or are likely to have a bearing upon the desirability of the transaction from the viewpoint of the principal. \* \* \*" (Emphasis added)

Cf. *Williams v. Pilgrim Turkey Packers*, 264 Or 36, 44-45, 503 P2d 710 (1972).

■ It follows that the trial court did not err in holding that Harris holds the vendor's interest in this contract in trust for the benefit of the partnership.[2]

3. *The disallowance by the trial court of plaintiffs' claim of interest was improper.*

Plaintiffs, in their cross-appeal, contend that the trial court erred in denying interest at six per cent per annum on the money misappropriated by defendants and owed by them to the plaintiffs, which the trial court held, after an accounting, to be the sum of $47,844.35.

Defendants contend, to the contrary, that a defendant cannot be charged with interest prior to the time when the exact amount is either ascertained or ascertainable; that this was impossible in this case "until after all of the evidence was considered" and "a decree rendered, and that, in any event, interest is not generally allowed in a partnership account, even for a fiduciary breach, \* \* \* unless under the pe-

---

[2] It also follows that there is no merit in defendants' remaining assignment of error to the effect that the trial court erred in requiring Harris to dismiss with prejudice his separate suit for foreclosure of the land sales contract, as the owner of the vendor's interest in that contract.

culiar facts and circumstances surrounding the case the equities demand that interest be charged," quoting from *Greenan v. Ernst,* 408 Pa 495, 184 A2d 570, 579 (1962).

Defendants also quote from our decision in *Liggett v. Lester, supra* at 61, as follows:

"* * * Ordinarily, interest is not chargeable in an accounting by one partner to another. * * * Nevertheless, the trial court may, in its discretion, add interest to the share owed by a partner guilty of a fiduciary breach, * * * or of improper use of partnership funds. * * *" (Emphasis added)

■ By that statement in *Liggett* we did not mean to say that the allowance or disallowance of interest in such a case is a question which is to be left entirely within the discretion of the trial court and that its decision on that question will not be reversed in the absence of a showing of an abuse of discretion. On the contrary, although we accord great weight to the decision of the trial court on this question, as we ordinarily do on all such questions in suits in equity, it must be kept in mind that this is an appeal in a suit in equity, which we try de novo.

■ We believe that if, as in this case, we find upon a review of the record that the evidence clearly demonstrates that a partner has been guilty of a breach of his fiduciary duty to his partners by arranging for and receiving payment of a commission without first making a disclosure of that fact to his partners and securing their consent to such payment under circumstances as aggravated as those in this case, such a fiduciary should be held chargeable with interest on the amount received by him in breach of his fiduciary duty. Accordingly, we hold that the

denial of interest by the trial court was improper in this case. Cf. *Duniway v. Barton, supra,* and *Stephan v. Equitable S & L Assn.,* 268 Or 544, 573, 522 P2d 478 (1974).

4. *Plaintiffs are entitled to the full amount of the sums misappropriated, without deduction of amounts paid to employees.*

Plaintiffs' remaining contention on cross-appeal is that the trial court erred in allowing defendants a set-off of some $34,656.10, representing that portion of the $82,500 found to have been misappropriated by the defendants which was paid to salesmen who secured the original listing and who secured the various "clients" who became partners in the venture. Plaintiffs again cite *Liggett v. Lester, supra* at 60, in which we distinguished cases involving "dealings with third parties" and held, under the facts of that case, that a partner who had withheld a "secret discount" must account for that "entire amount."

To the same effect, the following rule is stated in 1 Rowley on Partnership 532, § 21.1 (2d ed 1960):

"* * * The partner receiving secret commissions on the partnership transactions must account for the whole amount of the commissions so received, even though he may have been assisted in the deal by a third person, to whom he paid a part of such commissions. * * *"

Defendants contend, on the contrary, that "[t]he power of a court of equity to fashion justice should not be limited" and that "[r]emedies should be shaped to meet the needs of justice required by the facts of each case."

After a review of this record, however, we believe that the facts of this case are sufficiently ag-

gravated that the defendants should be held liable to account for payment to the partnership of the full amount misappropriated by defendants, without deductions or set-off of payments made to employees.[9]

The fact that in this case the commission received by International and by Harris was shared with salesmen employed by them does not, in our opinion, require a different result under the facts of this case.

Except as modified by the allowance of interest and the disallowance of the set-offs claimed by defendants, the decree of the trial court is affirmed and the case is remanded for the purpose of computing interest and the amount to be awarded by the final judgment.

Affirmed as modified.

---

[9] The set-offs disallowed also include $1,661.40 in "loans" and $564.60 "advanced for advertising." The disallowance of the set-offs makes it unnecessary to consider plaintiffs' remaining and alternative assignment relating to the allowance of a set-off for an amount subject to a promissory note delivered to one of defendants' employees in part payment of commissions payable to him.