Wendell O. MANDRELL, Linda B. Mandrell, and Patrick T. Vaden, Plaintiffs/Appellants,

and

William Curry Peacock and Gail Peacock, Plaintiffs,

v.

William T. McBEE and Shadelene McBee, Defendants,

and

Marshall Preston Sweeney, Defendant/Appellee.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 21, 1994.

Application for permission to Appeal Denied by Supreme Court Jan. 30, 1995.

Granville S.R. Bouldin, Granville S.R. Bouldin, Jr., Murfreesboro, for plaintiffs/appellants.

W. Kennerly Burger, Murfreesboro, for defendants/appellees.

## OPINION

KOCH, Judge.

This appeal involves a dispute concerning the misappropriation of the funds of a partnership formed to construct an office building in Murfreesboro. Several of the partners filed suit in the Chancery Court for Rutherford County against other partners seeking to recover the misappropriated funds, to dissolve the partnership, and to obtain an accounting of the partnership assets. The trial court, sitting without a jury, found that two of the defendant partners had misappropriated partnership assets and awarded a $40,000 judgment against one of them. The trial court also ordered the dissolution of the partnership and an accounting of its assets. The trial court certified its order as final pursuant to Tenn.R.Civ.P. 54.02, and two of the plaintiff partners perfected this appeal challenging the amount of the judgment. While we concur with the finding that the defendant partners misappropriated partnership funds, we have determined that the amount of the judgment is not supported by the proof. Therefore, we remand the case with directions that the damage award be increased to $91,176.03.

## I.

Wendell O. Mandrell and Patrick T. Vaden decided to build a new office building in downtown Murfreesboro after their residential mortgage origination business outgrew its leased quarters. Mr. Mandrell shared his plans with a business acquaintance named Marshall Preston Sweeney. Mr. Sweeney and his associate, William Curry Peacock, decided to become partners in the project because they were also looking for new offices.

Mr. Mandrell retained an architect to design the building in the early summer of 1986. Mr. Sweeney suggested that the partnership employ William T. McBee as the general contractor for the project. Mr. Mandrell and Mr. Vaden did not know Mr. McBee, but Mr. Sweeney and Mr. Peacock had worked with him on other projects. Mr. Sweeney shared the preliminary design for the building with Mr. McBee, and in August 1986, Mr. McBee estimated that the building would cost $398,980 to build. Mr. McBee offered to construct the building at cost in return for a twenty percent interest in the partnership. The others accepted Mr. McBee's proposal and agreed that each of the five partners would own twenty percent of the partnership.

The partners did not prepare a formal partnership agreement but agreed on a $570,980 budget for the project.[1] Mr. Swee-

---

1. The budget included $398,980 for the building, $122,000 for the land, and $50,000 for contin-

gencies.

ney arranged for a $575,000 construction loan from First City Bank where he served as a director and a member of the loan committee. The partners did not arrange for any formal controls for drawing down the construction funds; Messrs. Mandrell, Vaden, and Peacock basically left the financial arrangements to Mr. Sweeney and the construction of the building to Mr. McBee.

The partners closed the $575,000 loan on November 20, 1986 and immediately authorized drawing approximately $130,000 to purchase the property on which the building would be built. Mr. McBee later altered the building's plans to make it cheaper to build. Between February 10 and May 22, 1987, either Mr. Sweeney or Mr. McBee made eight draws totalling $575,000. All the loan funds were deposited in a personal checking account that Mr. McBee had opened at First City Bank in January 1987.

Messrs. Mandrell, Vaden, and Peacock did not learn that the loan proceeds had been exhausted until late May 1987. The news concerned them because the building was not complete and several subcontractors and material suppliers were insisting that they had not been paid. Messrs. Mandrell, Vaden, Sweeney, and Peacock moved into their new offices over the Memorial Day weekend even though the building was not completed. After they were unable to convince Mr. McBee to return to finish the construction, they were forced to borrow an additional $35,000 to complete the project.

Messrs. Mandrell, Vaden, Peacock, and Sweeney and their wives filed suit against Mr. McBee and his wife in January 1988, alleging that Mr. McBee had misrepresented the construction costs and that he had misappropriated a portion of the construction loan proceeds. After Mr. McBee revealed during discovery that he and Mr. Sweeney had agreed to use part of the loan proceeds to pay off other unrelated business debts, Messrs. Mandrell, Vaden, and Peacock

moved to amend their complaint to allege that Mr. Sweeney and his wife had also misappropriated a portion of the loan proceeds.[2]

In August 1990, the Circuit Court for Lincoln County convicted Mr. McBee of conspiracy to commit armed robbery. In November 1990, Mr. McBee pled guilty in the United States District Court for the Western District of Tennessee to mail fraud and owning an illegal gambling business. On December 18, 1990, the trial court entered an order granting Messrs. Mandrell, Vaden, Peacock, and Sweeney a $264,950 default judgment against Mr. McBee.

The trial court heard the evidence against Mr. Sweeney without a jury in February 1991 and in August 1992 filed a memorandum opinion finding that Messrs. Sweeney and McBee had conspired to pay themselves $20,000 each from the construction loan and that they were jointly and severally liable to the partnership for the $40,000 they diverted. Accordingly, the trial court awarded Messrs. Mandrell and Vaden a $40,000 judgment against Mr. Sweeney and denied Mr. Sweeney's post-trial motion to reduce the judgment to $20,000. Messrs. Mandrell and Vaden have perfected this appeal.

## II.

The remaining protagonists on this appeal are Messrs. Mandrell and Vaden on the one hand and Mr. Sweeney on the other. We take up first Messrs. Mandrell and Vaden's assertion that they are entitled to more than $40,000 judgment against Mr. Sweeney because they proved that Messrs. Sweeney and McBee misappropriated more than $40,000 in partnership funds.

■ All partners have an equal right to use and possess partnership property for partnership purposes. Tenn.Code Ann. § 61–1–124(a), –124(b)(1) (1989). They do not have a separate possessory interest in

---

**2.** Mr. Peacock eventually voluntarily dismissed his claims against Mr. Sweeney in accordance with Tenn.R.Civ.P. 41.01.

partnership property, and they do not have the right to use partnership property for their own purposes without the consent of the other partners. *Omnicon, Inc. v. King,* 688 S.W.2d 818, 819 (Tenn.1985); *Putnam v. Shoaf,* 620 S.W.2d 510, 514 (Tenn.Ct.App. 1981). When partners use partnership property for their own purposes, they must account to the partnership for the benefits they receive and must hold any profits derived by them as the partnership's trustees. Tenn. Code Ann. § 61–1–120(a) (1989).

■ Partnership property includes "all property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise, on account of the partnership." Tenn.Code Ann. § 61–1–107(a) (1989). Since it was the partnership that borrowed the $575,000 from First City Bank, the proceeds of the construction loan were partnership property. Therefore, the partners had an equal cotenancy interest in the loan proceeds, and no partner or group of partners had the right to use these proceeds for their personal benefit without the consent of the other partners.

■ Messrs. Mandrell and Vaden claim that Messrs. Sweeney and McBee defrauded the partnership in two ways: first by inflating the building's construction costs, and second by diverting partnership property to their own use. Like the trial court, we find that the evidence does not establish that either Mr. McBee or Mr. Sweeney fraudulently inflated the construction costs or, if Mr. McBee did inflate the costs, that Mr. Sweeney knew about or benefitted from Mr. McBee's conduct. Accordingly, the focus of this appeal is on the diversion of the loan proceeds.

■ The disbursement and use of the proceeds of the First City Bank construction loan followed a distinct pattern. First, either Mr. Sweeney or Mr. McBee would request a specific draw against the loan. Second, First City Bank would make a deposit in the exact amount of the requested draw into Mr. McBee's personal bank account at First City Bank. Third, Mr. McBee would write checks directly on this account or would deposit funds from this account into an account in the name of Continental Consultants, Inc. at the Bank of Camden and would then write checks on the Continental Consultants account.

Mr. McBee deposited most of the income he received from his various business ventures into his Continental Consultants checking account. These business ventures included other partnerships with Messrs. Sweeney and Peacock and with Mr. Sweeney alone. The funds were commingled, and the record contains no evidence identifying with accuracy the specific source of each of the deposits to the Continental Consultants account. Accordingly, the bank records provide no direct evidence tracing the proceeds of the partnership loan from Mr. McBee's personal account at First City Bank to his Continental Consultants account at the Bank of Camden.

Messrs. Mandrell and Vaden point to three transactions to support their misappropriation claim. The first transaction began with a $41,250 draw requested by either Mr. McBee or Mr. Sweeney on February 10, 1987. First City Bank deposited these funds into Mr. McBee's personal bank account, and on the same day, Mr. McBee wrote a $26,047.95 check on his Continental Consultants account to First City Bank. The check was in partial payment of a $50,000 loan to Messrs. Sweeney and McBee for a business venture involving a parking garage in Nashville.[3] Mr. McBee later deposited funds from this First City Bank account into his Continental Consultants account.

The second transaction commenced on March 4, 1987 when Mr. Sweeney requested a $72,260 draw from First City Bank. The bank deposited the funds into Mr. McBee's personal account, and on the same day, Mr. McBee wrote a $25,128.08 check on this account to First City Bank. The purpose of

---

**3.** Messrs. Mandrell, Vaden, and Peacock were unaware of this business venture or that Messrs. Sweeney and McBee had borrowed $50,000 from First City Bank.

this check was to pay the remaining balance due on Messrs. Sweeney and McBee's loan. On March 5, 1987, Mr. McBee deposited $30,000 into his Continental Consultant account at the Bank of Camden.

The third transaction commenced on April 21, 1987 when Mr. McBee requested a $70,000 draw from First City Bank. The bank deposited the funds in his personal account, and on the same day, Mr. McBee wrote Mr. Sweeney a $20,000 check on his Continental Consultants account. On April 22, 1987, Mr. McBee deposited $65,000 from his personal First City Bank account into his Continental Consultants account to cover the $20,000 check to Mr. Sweeney. For his part, Mr. Sweeney deposited the $20,000 check into his personal account and then used the funds to increase his capital contribution in another partnership with Mr. McBee and Mr. Peacock.

The timing of these transactions provides strong evidence that Mr. McBee was diverting partnership funds for purposes other than partnership business. They do not, however, provide proof that Mr. Sweeney knew about or approved of what Mr. McBee was doing. Mr. Sweeney may very well have known that Mr. McBee had paid off their $50,000 loan and certainly knew that Mr. McBee had written him a $20,000 check. However, the transactions themselves do not supply proof that he knew from whence the funds for these payments came.

The proof of Mr. Sweeney's knowledge of the source of the funds is supplied by Mr. McBee. By late summer of 1987, the partners were concerned about Mr. McBee's use of the proceeds from the construction loan. Mr. Sweeney requested Mr. McBee to account for the loan proceeds, and Mr. Peacock informed Mr. McBee that Mr. Mandrell had consulted an attorney about the law concerning the misapplication of loan payments. In response, Mr. McBee provided Mr. Sweeney with a summary of their financial dealings showing that Continental Consultants had expended $52,246.58 to pay off the First City Bank note. Mr. McBee followed up this summary with a September 30, 1987 letter to Mr. Sweeney stating, in part:

> As you know, when you and I agreed to build the office building located on Church Street in Murfreesboro for five investors, you and I being two of the same, we agreed to pay off the indebtedness against the Seventh Avenue Parking Garage from the proceeds from the office building. In addition, we each took a cash advance of $20,000 each, totaling $40,000 from the office building funds.

Mr. Sweeney did not deny the statements in Mr. McBee's letter and did not share the letter with Messrs. Peacock, Mandrell, and Vaden.

The trial court found that Messrs. Sweeney and McBee "conspired to pay to themselves $20,000 each from the partnership money in this venture." It declined, however, to find that the $51,176.03 involved in the February 10 and March 4, 1987 transactions was likewise misappropriated, even though it noted that "there is some evidence that the Defendants may have intended to appropriate another $50,000 or even $100,000 from the loan proceeds."

The trial court did not make a specific finding concerning Mr. McBee's credibility. Its decision to require Mr. Sweeney to repay $40,000 to Messrs. Mandrell and Vaden indicates, however, that the trial court must have given some credence to the statements in Mr. McBee's September 30, 1987 letter because the record contains no other factual basis for imputing to Mr. Sweeney the knowledge of the source of the $20,000 he received. We likewise accredit Mr. McBee's account of his agreement with Mr. Sweeney concerning the use of the construction loan proceeds. The statement is an admission against Mr. McBee's interest, and Mr. McBee had no reason to misstate the nature of this agreement with Mr. Sweeney when he made the statement.

We find that the timing of the transactions stemming from the February 10, March 4, and April 21, 1987 draws and Mr. McBee's

testimony concerning his agreement with Mr. Sweeney about the use of the loan proceeds prove that Messrs. McBee and Sweeney diverted $91,176.03 from the partnership. Accordingly, we find that the evidence preponderates against the trial court's finding that Messrs. McBee and Sweeney diverted $40,000 in partnership property and in favor of finding that they diverted $91,176.03.

### III.

■ Mr. Sweeney asserts that Messrs. Mandrell and Vaden should not be permitted to seek a dissolution of the partnership before an accounting of the partnership assets can be completed. Partners may not, as a general matter, maintain actions at law against their fellow partners with respect to partnership transactions unless there has been an accounting or settlement of the partnership affairs. *Snow v. Adamson,* 215 Tenn. 341, 344, 385 S.W.2d 759, 761 (1965); *Davis v. Fisher,* 27 Tenn.App. 663, 668, 184 S.W.2d 400, 402 (1944). There are, however, exceptions to this rule. It does not apply when the lawsuit arises out of the breach of a partner's fiduciary obligations to the partnership, fraud, or the improper use of partnership funds. *Snow v. Adamson,* 215 Tenn. at 345–46, 385 S.W.2d at 761–62.

Messrs. Mandrell and Vaden's action against Messrs. Sweeney and McBee fits squarely within the exception. They allege that Messrs. Sweeney and McBee violated their obligations to the partnership by diverting partnership funds to their own private benefit without their partners' permission. Accordingly, we find that the trial court properly permitted the suit against Messrs. Sweeney and McBee to continue. In the accounting of the partnership assets, Messrs. Mandrell and Vaden may use the $91,176.03 judgment as a set-off against Mr. Sweeney's share of the partnership assets when the partnership is dissolved.

### IV.

■ Trial courts may award prejudgment interest in cases of this sort in accordance with equitable principles. Tenn.Code Ann. § 47–14–123 (1988). An award of prejudgment interest is warranted when partners have breached their fiduciary obligation by improperly diverting partnership property for their own benefit. *Liggett v. Lester,* 237 Or. 52, 390 P.2d 351, 355 (1964); 59A Am. Jur.2d *Partnership* § 1013 (1987). Accordingly, we affirm the trial court's decision to award prejudgment interest against Mr. Sweeney from April 21, 1987 and direct that the trial court, on remand, calculate this interest on $91,176.03 instead of $40,000.

### V.

We affirm the trial court's finding that Messrs. Sweeney and McBee wrongfully diverted partnership property for their own purposes and remand the case to the trial court for the entry of an order awarding Messrs. Mandrell and Vaden a judgment against Mr. Sweeney in the amount of $91,176.03 plus prejudgment interest calculated from April 21, 1987. We also tax the costs of this appeal to Marshall Preston Sweeney for which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.