Argued and submitted May 20, 2014, judgment reversed as to claim for lien foreclosure and as to attorney fees, otherwise affirmed October 14, 2015

MULTI/TECH ENGINEERING SERVICES, INC.,
an Oregon corporation,
*Plaintiff-Respondent,*

*v.*

INNOVATIVE DESIGN & CONSTRUCTION, LLC,
an unlicensed contractor,
*Defendant,*

*and*

Gene PFEIFER,
an individual;
Donald H. Adler, an individual;
Adler Commercial Properties, LLC;
Care Medical Source; and
Care Medical Rehabilitation Equipment,
*Defendants-Appellants.*

Marion County Circuit Court
11C10868; A153220

360 P3d 701

Jeffrey A. Trautman argued the cause for appellant Gene Pfeifer. With him on the briefs was Fetherston Edmonds, LLP.

Joseph D. McDonald argued the cause for appellants Donald H. Adler, Adler Commercial Properties, LLC, Care Medical Source, and Care Medical Rehabilitation Equipment. With him on the briefs was Smith, McDonald & Vaught, LLP.

Ralph M. Yenne argued the cause and filed the brief for respondent.

Before Nakamoto, Presiding Judge, and Egan, Judge, and Lagesen, Judge.*

LAGESEN, J.

---

* Lagesen, J., *vice* Armstrong, P. J.

**LAGESEN, J.**

Plaintiff, Multi/Tech Engineering Services, Inc., (Multi/Tech) provided engineering services in connection with defendant Adler Commercial Properties' (ACP) city permit applications for the construction of a medical equipment business. Multi/Tech provided those services under a contract with ACP's agent for the permitting process, defendant Innovative Design & Construction, LLC (Innovative), but was not paid in full for them. This action, for the unpaid amount—about $6,700—followed. The trial court concluded that Multi/Tech was entitled to recover its money, ruling that (1) Multi/Tech had a valid statutory lien in the unpaid amount on ACP's property under ORS 87.010(5),[1] on which Multi/Tech was entitled to foreclose; (2) Multi/Tech was entitled to recover the unpaid amount from both ACP and Innovative under a breach-of-contract theory; and (3) Multi/Tech also was entitled to recover the unpaid amount from ACP and Innovative under a *quantum meruit* theory. The trial court thereafter awarded attorney fees to Multi/Tech; it also denied the attorney fee requests of several other defendants that Multi/Tech had named in the complaint, but whom the court had dismissed: defendant Adler, the principal of ACP; defendant Pfeifer, the principal of Innovative; and defendants Care Medical Source and Care Medical Rehabilitation Equipment, two other companies operated by Adler that Multi/Tech sued because it was not certain which of Adler's companies owned the property for which Multi/Tech provided the engineering services.

All defendants except Innovative have appealed. We affirm in part and reverse in part. We conclude that Multi/Tech failed to provide to ACP the notice required by statute to establish a valid lien on ACP's property and that, as a result, the trial court erred in entering judgment in Multi/Tech's favor on its claim for lien foreclosure. However, we

---

[1] ORS 87.010(5) provides:

"An architect, landscape architect, land surveyor or registered engineer who, at the request of the owner or an agent of the owner, prepares plans, drawings or specifications that are intended for use in or to facilitate the construction of an improvement or who supervises the construction shall have a lien upon the land and structures necessary for the use of the plans, drawings or specifications so provided or supervision performed."

affirm the judgment in Multi/Tech's favor on the claim for breach of contract, concluding that the record supports the trial court's finding that Innovative acted as ACP's agent in entering the contract with Multi/Tech. We also affirm the trial court's judgment in Multi/Tech's favor and against ACP on the *quantum meruit* claim.[2] Regarding attorney fees, we reverse and remand for reconsideration of all parties' claims for attorney fees in light of our modification of the trial court's disposition of the case.

## I. FACTS

Adler bought some real property in Salem, which he later transferred to his company, ACP. Adler wanted to build a commercial building on the property, and move the operations of his business—Care Medical Rehabilitation Equipment—to the site. To accomplish that goal, Adler enlisted the assistance of Pfeifer and Innovative. Adler and Pfeifer verbally agreed that Innovative would perform "all [of] the [initial] groundwork" for the development of the property, including design work, obtaining necessary approval for the project from the City of Salem, and helping arrange for financing. The city approval processes triggered by the proposed project included a Type II Site Plan Review and Zoning Adjustment; Pfeifer, as manager of Innovative, was ACP's agent in those processes.

At the time that he entered into the agreement with Pfeifer and Innovative, Adler understood that the city's approval processes required a number of different plans and analyses regarding the proposed development. Adler also understood that to prepare those plans and analyses, Pfeifer and Innovative would need to hire an engineer. And that is what Pfeifer and Innovative did. They entered into a written contract with Multi/Tech, under which Multi/Tech agreed to perform engineering work associated with obtaining a

---

[2] Although ACP's summary of argument contains statements suggesting that it is challenging the court's judgment in Multi/Tech's favor on the *quantum meruit* claim, ACP does not assign error to the court's ruling on the *quantum meruit* claim, its brief contains no developed argument regarding the *quantum meruit* claim, and its other assignments of error—meritorious or not—do not in any readily apparent way call into question the court's judgment on the *quantum meruit* claim. For those reasons, we conclude that ACP has not presented a cognizable challenge to the court's judgment on the *quantum meruit* claim.

Type II approval from the city for the project, as well as follow-up engineering work upon approval of the project. The work included the preparation of a grading plan, drainage plan, utility plan, storm water detention analysis, meeting with the Salem Public Works Department, and additional analyses required for city approval. Pfeiffer and Multi/Tech later entered into an addendum to the original contract, under which Multi/Tech agreed to provide structural design services for the proposed building, and to prepare a geotechnical report for ACP to submit to the city as part of its Type II application. In working on the project, Multi/Tech dealt directly with Pfeifer, but its instructions on the project derived from Adler, with Pfeifer acting as "the conduit which information that came back from \* \* \* Adler on design questions came from."

Multi/Tech completed all the engineering services requested of it. Adler, through Innovative, paid all of Multi/Tech's bills except the last one, leaving $6,778.90 due to Multi/Tech. Multi/Tech then recorded a lien for the unpaid amount on ACP's property. The lien identified Adler, ACP, Care Medical Source, and Care Medical Rehabilitation Equipment as the owners of the subject property, and identified Innovative and Pfeiffer as the lien debtors. The lien stated that it was "for the balance due for services, currently [$6,778.90] for design work that is highly specific and unique to the situs of this development." The lien explained that "claimant has prepared plans, drawings and specifications in connection with building design" and that that work gave rise to a lien for the amount still owed to Multi/Tech under the terms of its contract. Multi/Tech, through its lawyer, then demanded payment of the lien from Pfeifer and Innovative, and from Adler, ACP, Care Medical Source, and Care Medical Rehabilitation Equipment. No one paid. Multi/Tech then filed this action, seeking to foreclose the lien and to recover the unpaid amount as damages for the breach of the services contract and under a theory of *quantum meruit.* Multi/Tech named Adler, ACP, Care Medical Source, Care Medical Rehabilitation Equipment, Pfeifer, and Innovative as defendants.

Following a bench trial, the trial court dismissed the claims against Adler, Pfeifer, Care Medical Source, and

Care Medical Rehabilitation Equipment. As to the claims against ACP and Innovative, the trial court found that Innovative was acting as ACP's agent when it contracted with Multi/Tech for the engineering services that Multi/Tech provided. Based on that finding, the court ruled that Multi/Tech had a valid lien for those services on ACP's property, and was entitled to a judgment of foreclosure of that lien. In reaching that conclusion, the court rejected ACP's argument that Multi/Tech had not perfected its lien because it did not provide ACP with the notice required by statute to perfect a contractor's lien. The court also relied on the finding that Innovative was ACP's agent to conclude that ACP, as well as Innovative, were liable to Multi/Tech for breach of contract for failing to pay the amount due under the contract between Multi/Tech and Innovative. The court further ruled that Multi/Tech was entitled to recover the unpaid amount from both ACP and Innovative under a *quantum meruit* theory of recovery. The trial court awarded attorney fees to Multi/Tech, but declined to award attorney fees to the defendants that it had dismissed from the case.

All defendants—except Innovative—appeal. ACP challenges the trial court's ruling in Multi/Tech's favor on its claims for lien foreclosure and breach of contract, as well as the trial court's award of attorney fees to Multi/Tech. The other defendants—Adler, Pfeifer, Care Medical Source, and Care Medical Rehabilitation Equipment—assign error to the trial court's denial of their requests for attorney fees.

## II. STANDARDS OF REVIEW

This case involves equitable claims (lien foreclosure, *quantum meruit*), a legal claim (breach of contract), and issues about attorney fees. Although ORAP 5.40(8)(c) and ORS 19.415(3) give us the discretion in "exceptional cases" to review *de novo* the trial court's rulings on equitable claims, this is not an exceptional case. We therefore apply the same standard of review to the trial court's rulings on the equitable claims and its ruling on the legal claim. Under that standard, we "review the trial court's legal conclusions for legal error and review its factual findings to determine whether those findings are supported by

any evidence in the record." *Vukanovich v. Kline*, 268 Or App 623, 633, 342 P3d 1075, *adh'd to as modified on recons*, 271 Or App 133, 349 P3d 567 (2015). In so doing, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Wilson v. Gutierrez*, 261 Or App 410, 411, 323 P3d 974 (2014) (internal quotation marks and citation omitted).

## III.   ANALYSIS

### A.   *Statutory Lien*

We first address ACP's contention that the trial court erred by entering judgment in Multi/Tech's favor on Multi/Tech's claim for lien foreclosure. ACP argues that Multi/Tech did not provide the notice of lien rights required by ORS 87.021(1) and that, as a result, Multi/Tech did not have a perfected lien on which it was entitled to foreclose. In response, Multi/Tech asserts that it did, in fact, provide the notice required by ORS 87.021(1). In the alternative, Multi/Tech argues that ORS 87.021(3)(b) excused it from complying with the notice requirement. We agree with ACP.

By way of background, ORS 87.010 provides for a variety of construction-related liens for persons who provide labor, materials, equipment, or services in connection with a construction project. As pertinent to this case, ORS 87.010(5) provides for construction liens for persons who provide certain professional services in connection with a construction project, including engineering services:

> "An architect, landscape architect, land surveyor or registered engineer who, at the request of the owner or an agent of the owner, prepares plans, drawings or specifications that are intended for use in or to facilitate the construction of an improvement * * * shall have a lien upon the land and structures necessary for the use of the plans, drawings or specifications so provided * * *."

In order to perfect one of the construction liens authorized by ORS 87.010, including a lien under ORS 87.010(5), a person who is entitled to a lien ordinarily must provide the owner of the property subject to the lien with

notice of the person's right to a lien. ORS 87.021(1) - (3).[3] Failure to provide the notice—when notice is required—means that the lien is not perfected and is not valid. ORS 87.021(3)(a); *Teeny v. Haertl Constructors, Inc.*, 314 Or 688, 697-99, 842 P2d 788 (1992) (subcontractors' liens were invalid when subcontractors did not provide notice required by ORS 87.021(1)).

The legislature has carved out an exception to the notice requirement for certain persons who work on "commercial improvements."[4] Under that exception, "[a] person who performs labor upon a commercial improvement or provides labor and material for a commercial improvement" need not provide the notice that would otherwise be

---

[3] ORS 87.021 provides, in relevant part:

"(1) Except when material, equipment, services or labor described in ORS 87.010 (1) to (3), (5) and (6) is furnished at the request of the owner, a person furnishing any materials, equipment, services or labor described in ORS 87.010 (1) to (3), (5) and (6) for which a lien may be perfected under ORS 87.035 shall give a notice of right to a lien to the owner of the site. The notice of right to a lien may be given at any time during the progress of the improvement, but the notice only protects the right to perfect a lien for materials, equipment and labor or services provided after a date which is eight days, not including Saturdays, Sundays and other holidays as defined in ORS 187.010, before the notice is delivered or mailed. However, no lien is created under ORS 87.010 (5) or (6) for any services provided for an owner-occupied residence at the request of an agent of the owner.

"(2) The notice required by subsection (1) of this section shall be substantially in the form set forth in ORS 87.023.

"(3)(a) Except as provided in paragraph (b) of this subsection, a lien created under ORS 87.010 (1) to (3), (5) or (6) may be perfected under ORS 87.035 only to the extent that the notice required by subsection (1) of this section is given.

"(b) A person who performs labor upon a commercial improvement or provides labor and material for a commercial improvement or who rents equipment used in the construction of a commercial improvement need not give the notice required by subsection (1) of this section in order to perfect a lien created under ORS 87.010. As used in this paragraph:

"(A) 'Commercial improvement' means any structure or building not used or intended to be used as a residential building, or other improvements to a site on which such a structure or building is to be located.

"(B) 'Residential building' means a building or structure that is or will be occupied by the owner as a residence and that contains not more than four units capable of being used as residences or homes."

[4] A "commercial improvement" is "any structure or building not used or intended to be used as a residential building, or other improvements to a site on which such a structure or building is to be located." ORS 87.021(3)(b)(A).

required. The exception applies only to persons who perform labor or provide materials at the site of the commercial improvement: "'[A] person who performs labor upon a commercial improvement or provides labor and material for a commercial improvement,' within the meaning of ORS 87.021(3)(b), is a person who labors *at the site of* the commercial improvement." *Teeny*, 314 Or at 698 (emphasis added). The exception does not apply to persons whose work in connection with the commercial improvement is off site, even if that off-site work requires incidental contacts with the site. *Id.* (concluding that material suppliers who worked off site were not covered by the ORS 87.021(3)(b) exception by virtue of the fact that they had sent employees to the job site to take measurements). Thus, for example, in *Teeny*, the Supreme Court concluded that persons who provided materials for a commercial improvement, but who did not work at the job site, were not excepted from the ORS 87.021(1) notice requirement, notwithstanding the fact that they had visited the site to take measurements and for meetings in connection with the project. *Id.* at 698, 698 n 4.

Here, the record does not disclose the basis for the trial court's conclusion that Multi/Tech perfected its lien. That is, we cannot tell whether the trial court found, as fact, that Multi/Tech provided the notice of lien rights required by ORS 87.021(1) to ACP or if, instead, the trial court concluded that Multi/Tech was excused from providing notice by ORS 87.021(3)(b). Either way the trial court erred.

On the one hand, if the trial court found as fact that Multi/Tech provided the notice of lien rights to ACP, then that finding is not supported by any evidence in the record. Although Multi/Tech points out that its contract with Innovative contained, as "Appendix B," a sample fill-in-the-blank form for a "Notice of Right to Lien," that empty form does not support a finding that Multi/Tech ever filled in that form with the information required by statute and transmitted it to ACP, either directly or through an agent.[5]

---

[5] Multi/Tech argues at length that it could satisfy its obligation to provide notice to ACP by providing notice to Innovative. We do not address that point because there is no evidence that Multi/Tech provided the statutorily required notice to either ACP or Innovative.

Put another way, an empty sample template for the notice required by ORS 87.021(1) is not the same thing as the notice required by the statute because it omits important information, such as the date that the right to a lien arises, and the property alleged to be subject to any potential lien.[6]

If, on the other hand, the trial court concluded that Multi/Tech was exempt from the notice requirement under ORS 87.021(3)(b), then the trial court misconstrued the statute. It is undisputed that Multi/Tech's lien is for professional engineering services that were provided away from the job site. Although Multi/Tech's employees had contact with the job site in the course of providing those engineering services, those contacts consisted of (1) clearing away some vegetation and digging small holes, (2) taking measurements of the property, (3) conducting "field exploration work," and (4) taking a soil sample. Under *Teeny,* those incidental contacts do not operate to make Multi/Tech "[a] person who performs labor upon a commercial improvement or provides labor and material for a commercial improvement" within the meaning of ORS 87.021(3)(b). As a result, Multi/Tech was not excused from providing the notice required by ORS 87.021(1).

In sum, Multi/Tech did not provide ACP with the notice required by ORS 87.021(1), and was not excused from providing that notice under ORS 87.021(3)(b). Multi/Tech therefore failed to perfect its lien, and the trial court erred in granting a judgment of lien foreclosure to Multi/Tech. *See Teeny,* 314 Or at 699 (failure to provide notice required by ORS 87.021(1) renders lien invalid).

B.  *Breach of Contract*

Although it is not entirely clear from its brief, ACP also appears to challenge the trial court's ruling in Multi/

---

Multi/Tech also notes that Innovative provided its own notice of lien rights to ACP, and argues that Innovative's notice satisfied Multi/Tech's obligation to provide notice of lien rights to perfect is own lien. We reject that argument without discussion.

[6] Among other things, the notice required by ORS 87.021(1) must identify the owner of the property subject to the potential lien, the date of the mailing of the notice, the address of the property, and who ordered the labor, material, equipment, or services alleged to give rise to the right to a lien. *See* ORS 87.021(2) (requiring notice to have "substantially" the form set forth in ORS 87.023); ORS 87.023 (spelling out content of notice of lien rights).

Tech's favor on Multi/Tech's breach-of-contract claim. ACP assigns error to the trial court's factual finding that, in entering the contract with Multi/Tech, Innovative acted as ACP's "agent in fact." ACP argues that the record contains no evidence to support a finding that Innovative acted as ACP's agent in contracting with Multi/Tech. Our review of the record persuades us otherwise. Accordingly, we affirm the trial court's judgment insofar as it found for Multi/Tech against ACP on Multi/Tech's breach-of-contract claim.

## C. *Attorney Fees*

As noted, the dismissed defendants assign error to the trial court's denial of their requests for attorney fees, pointing out that, under ORS 20.082, "a court *shall* allow reasonable attorney fees to the prevailing party on any claim based on contract" where, as here, the contract claim is for less than $10,000, and the contract does not otherwise provide for attorney fees. ORS 20.082 (emphasis added). In addition, ACP assigns error to the award of fees to Multi/Tech, arguing, primarily, that Multi/Tech failed to comply with certain procedural requirements for a fee award.

As we understand the trial court's rulings on the competing fee requests, those rulings—both the rulings denying fees to the dismissed defendants and awarding fees to plaintiff—were predicated, in part, on the fact that Multi/Tech prevailed on all three of its claims: its claim for lien foreclosure, its claim for breach of contract, and its claim for *quantum meruit* recovery. We have concluded that the judgment in Multi/Tech's favor on the claim for lien foreclosure must be reversed because of Multi/Tech's failure to comply with the ORS 87.021(1) notice requirement. In the light of the partial reversal, we reverse the fee award and remand for the trial court to reconsider the parties' competing fee requests through the process outlined in ORCP 68. ORS 20.220(3)(a) (reversal of judgment on which fee award is predicated requires reversal of fee award predicated on judgment); *see Hadley v. Extreme Technologies, Inc.*, 272 Or App 49, 74, 355 P3d 132 (2015) (vacating fee award where underlying judgment was reversed).

Although the trial court originally concluded otherwise for reasons that are not entirely clear to us,[7] on remand, the dismissed defendants will be entitled to reasonable attorney fees for prevailing on the breach-of-contract claim, provided they petition for them on remand. ORS 20.082 makes the award of such fees mandatory. In addition, our disposition of plaintiff's lien foreclosure claim gives rise to an entitlement to attorney fees to the prevailing defendants named on that claim, should they petition for them. ORS 87.060(5) makes such an award mandatory "to the party who prevails on the issues of the validity and foreclosure of the lien." Any other issues regarding entitlement and amount of fees are for the trial court to resolve in the first instance upon consideration of the parties' fee petitions.

Judgment reversed as to claim for lien foreclosure and as to attorney fees; otherwise affirmed.

---

[7] The trial court did not employ the process established by ORCP 68 for assessing attorney fees, and appears to have resolved many of the issues related to the parties' fee requests when evaluating the parties' competing proposed forms of judgment. As a result, the record underlying the court's fee determination is not as clear as a record developed through the ORCP 68 process typically is.