Submitted January 12, 2021; general judgment reversed, supplemental judgment affirmed February 16, 2022

Rickie J. LITTLE,
an individual, and
Wayne Anderson, an individual,
*Plaintiffs-Respondents,*

*v.*

BRANCH 9 DESIGN AND CONTRACTING, LLC,
an Oregon limited liability company et al.,
*Defendants,*
*and*

Paul Robert PARSONS,
an individual,
*Defendant-Appellant.*

Multnomah County Circuit Court
18CV38202; A172650

505 P3d 440

Defendant appeals a general judgment and money award to plaintiffs and a supplemental judgment in favor of the State of Oregon for deferred filing fees in this action that involves the breach of a residential remodeling contract. Plaintiffs brought claims against four defendants and obtained a default judgment against three of them, including defendant's partner in a general partnership. After a bench trial against defendant, the trial court concluded that defendant was jointly and severally liable for his partner's breach of contract and all damages flowing therefrom. On appeal, defendant argues that the trial court erred in concluding that he is jointly and severally liable for the debts and obligations of his partner's separate business. Defendant does not provide argument regarding the supplemental judgment. *Held*: Defendant's liability needed to be grounded in partnership law, but partnership law provided no basis under the circumstances for holding defendant liable for the debts of his partner's separate business. Therefore, the trial court erred in concluding otherwise.

General judgment reversed; supplemental judgment affirmed.

Shelley D. Russell, Judge. (Judgment October 9, 2019)

Stephen K. Bushong, Judge. (Supplemental Judgment October 10, 2019)

Michael J. Lilly filed the brief for appellant.

No appearance for respondent Wayne Anderson.

No appearance for respondent Rickie J. Little.

Before Mooney, Presiding Judge, and Egan, Judge, and DeVore, Senior Judge.

DeVORE, S. J.

General judgment reversed; supplemental judgment affirmed.

**DeVORE, S. J.**

Defendant Parsons appeals from a general judgment and supplemental judgment entered against him in this action involving the breach of a residential remodeling contract between plaintiffs and defendants Raymond, Gorman, and Branch 9 Design and Contracting, LLC (codefendants).[1] In his sole assignment of error, defendant asserts that the trial court erred in ruling that he is jointly and severally liable for Gorman's breach of contract and all damages flowing therefrom. We agree with defendant and, therefore, reverse the general judgment. We affirm the supplemental judgment.

The case was tried to the court, and the court issued an Opinion and Order containing its factual findings and conclusions of law. Defendant challenges one of the trial court's legal conclusions; he does not claim any error regarding the court's factual findings. We review for errors of law. *Multi/Tech Eng. Svcs. v. Innovative Des. & Constr.*, 274 Or App 389, 394-95, 360 P3d 701 (2015).

We state the facts as found by the trial court. Defendant formed a general partnership with Gorman in about 2010 (the partnership). They shared defendant's Oregon Construction Contractors Board (CCB) license and performed construction services. Defendant was the named Responsible Managing Individual (RMI) on the license.[2] At some point after forming the partnership, Gorman began taking on projects with Raymond, under the business entity Branch 9 Design and Contracting, LLC (Branch 9). Defendant knew of and approved of the arrangement

---

[1] Plaintiffs did not file a response brief; defendant Parsons is the only party appearing on appeal, and we refer to him as defendant. The trial court entered a default judgment against the three other defendants that were named in the lawsuit; we refer to those defendants by name or collectively as "codefendants."

[2] We note that ORS 701.091(1) requires a business to have an RMI: "A business licensed under this chapter must at all times have at least one responsible managing individual." The RMI is an owner or employee of the business and "[e]xercises management or supervisory authority, as defined by the board by rule, over the construction activities of the business." ORS 701.005(16)(a), (b). OAR 812-002-0265 defines that phrase as "meaningfully participating in: (1) The administration of construction contracts performed by the business; or (2) The administration of the day-to-day operations of the business."

between Gorman and Raymond. Defendant is not an owner or employee of Branch 9.

In March 2017, Gorman, Raymond, and Branch 9 entered into a contract with plaintiffs to provide home improvements and renovations on property owned by plaintiffs. The contract included the use of the partnership's CCB license. Defendant did not participate in contract negotiations, and he did not make any representations to plaintiffs regarding CCB licensure, the contract, or his relationship with Gorman and Branch 9.

Defendant worked on the project with Gorman for approximately one week during the demolition phase. He had no further involvement in the work on the project. Defendant did not receive any compensation under the contract from plaintiffs or codefendants. In April 2017, plaintiffs terminated the contract due to codefendants' failure to complete the work in a timely manner and due to codefendants' misrepresentations made to plaintiffs about paying subcontractors. At the time of termination, plaintiffs had paid codefendants $53,639.52. Codefendants did not refund any of the funds advanced to them on the project, which were purportedly for the payment of subcontractors. As a result of codefendants' failure to complete the work, plaintiffs suffered damages equal to the amount of the payments they advanced to codefendants.

Plaintiffs filed a lawsuit, making several claims, including breach of contract. In January 2019, the trial court entered a default judgment in the amount of $58,609.52 plus costs and disbursements against codefendants. The court held a trial in August, at which plaintiff Little appeared along with defendant. Each appeared without counsel.

At trial, plaintiffs' theory of liability was that because Gorman and defendant had a partnership and the CCB license number used by Gorman was a license of the partnership, and because defendant is the RMI for the license, defendant was responsible for Gorman's breach of contract under the partnership statutes. Defendant argued that he had nothing to do with the contract, nor with Branch 9, that partners are not required to do every project together, and that he was not required to oversee Gorman's business

if he was not involved in it. The trial court framed the question it needed to answer as depending "on what [the] statutes tell me about this business relationship and what, if any, liability attaches in [defendant's] position as a general partner, as the RMI."

The trial court took the matter under advisement and ultimately agreed with plaintiffs. The court's written order states, "Defendant Parsons, as a general partner of defendant Gorman with respect to the CCB license, is jointly and severally liable for defendant Gorman's breach of contract and all damages flowing therefrom."[3] Accordingly, the court entered a judgment against defendant, awarding plaintiffs $58,609.52 in damages and $1,676.00 in costs and disbursements. The trial court later entered a supplemental judgment against defendant in the amount of $560 for deferred court fees pursuant to ORS 21.692.

On appeal, defendant asserts that he is not liable for the debts and obligations of Gorman's separate business. As we understand the trial court's holding, it concluded that because defendant and Gorman were in a partnership and shared a CCB license, defendant is liable for Gorman's breach of contract. Defendant acknowledges that partners are jointly and severally liable for *their partnership's debts and obligations*. Under ORS 67.105(1), "all partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law." In addition, a "partnership is liable for loss or injury caused to a person *** or for a penalty incurred as a result of a wrongful act or omission or other actionable conduct *of a partner acting in the ordinary course of business of the partnership or with authority of the partnership*." ORS 67.100(1) (emphasis added). Defendant contends that Gorman's Branch 9 business—the entity that did business with plaintiffs—was separate from the partnership he had with Gorman; Gorman was not acting in the course of their partnership's business; and defendant did not authorize the acts that caused plaintiffs' damages. Therefore, according to

---

[3] The trial court rejected plaintiffs' other four claims for relief that were alleged in the complaint, which included claims of fraud, unjust enrichment, and violation of certain statutes.

defendant, the judgment against codefendants is not a liability of the partnership with Gorman, and he is not jointly and severally liable under ORS 67.100(1).

A partner is not limited to working only with or for the partnership of which he is a part. The Supreme Court has recognized

> "that a partner may engage in enterprises in his own behalf while he is a member of a partnership, provided that he acts in good faith toward the other partners. This qualified right to engage in other business, however, is further qualified and limited where the separate business is of the same nature as that engaged in by the partnership. In such a case the consent of the other partners must be obtained before one partner may engage in a competitive enterprise."

*Liggett v. Lester*, 237 Or 52, 58-59, 390 P2d 351 (1964) (citation omitted); *see also* ORS 67.042(2)(b)(B) (partnership agreement may authorize acts that would otherwise constitute a breach of the duty of loyalty). Although *Liggett* involved a situation where one partner breached his fiduciary duty to his partner, the concept is illustrative for the situation here. Gorman decided to create and operate a separate LLC that engaged in the same kind of work as the partnership, and defendant was aware of and approved of that arrangement. The mere fact that Gorman was in a partnership with defendant does not lead to the conclusion that all of Gorman's business activities were connected or attributed to the partnership.

Further, the trial court's factual findings support defendant's argument. The court found that Branch 9 was a separate business from the partnership and that defendant was not an owner or employee of Branch 9. In addition, codefendants entered into the contract with plaintiffs, but defendant did not participate in the formation of the contract and did not receive any payment in connection with the contract. The trial court found that defendant had knowledge of and approved the arrangement that Gorman had with Raymond in regard to taking on projects using the business entity of Branch 9, but the court did not find that the business of Branch 9 was the "ordinary course of business of the partnership" or that the actions of Branch 9 or its members

were acts, omissions, or conduct of a partner acting "with authority of the partnership." ORS 67.100(1). Indeed, the court specifically found that, other than working briefly on the demolition phase of the project, "Defendant Parsons had no further involvement in the work on the project." There was no evidence that defendant had any knowledge about what happened on the project, including codefendants' failure to pay subcontractors, let alone that he authorized actions of codefendants.

Defendant also argues that Gorman's use of the partnership's CCB license number did not create liability for defendant. We briefly address that argument because of the possibility that the trial court relied on Gorman's use of the license to reach its conclusion. The trial court found that Gorman used the partnership's license number on plaintiffs' project. However, defendant correctly points out that he did not testify that he knew that Gorman had used it for the project, and the trial court did not find that defendant knew that Gorman had used the license. There is therefore no finding here that Gorman used the license "with authority of the partnership." ORS 67.100(1).

Defendant argues that nothing in the CCB rules or ORS chapter 701, the Construction Contractor Licensing Act, creates liability for him. The Act provides that

"a person *** that undertakes, offers to undertake or submits a bid to do work as a contractor must have a current license issued by the Construction Contractors Board and possess an appropriate endorsement as provided in this section. For purposes of offering to undertake or submitting a bid to do work, a partnership *** is licensed and endorsed if any partner *** whose name appears in the business name of the partnership *** has a current license issued by the board and possesses an appropriate endorsement."

ORS 701.021(1). The Oregon Administrative Rules specify that a "license and its identifying license number will be issued to one entity only. Other entities shall not be included in that license, but each shall be separately licensed and shall separately meet the licensing requirements. No entity may perform work subject to ORS Chapter 701 through the use of another entity's license." OAR 812-003-0100(1).

An "entity" is defined to include sole proprietorships, partnerships, and limited liability companies, among others. OAR 812-003-0100(2). Under those provisions, Gorman was required to have a separate license to enter into a construction contract on behalf of Branch 9, and Branch 9 was prohibited from using the license of the partnership. It is possible, then, that Gorman was subject to discipline under chapter 701 or the CCB rules, a matter which we do not decide; however, a violation of those provisions by Gorman does not create liability for defendant for Gorman's use of the license and subsequent breach of contract.[4]

In sum, defendant's liability must be grounded in partnership law, but partnership law provides no basis under the circumstances here for holding defendant liable for debts of Gorman's separate business. The trial court erred in concluding otherwise, and we, therefore, reverse the general judgment entered against defendant.

As noted above, defendant also appealed the supplemental judgment entered on October 10, 2019, in favor of the State of Oregon regarding deferred filing fees. *See* ORS 21.692 (on judgments regarding deferred fees). He has not provided argument as to why that judgment should be reversed. We presume that, upon reversal of the general judgment, he may file a statement of costs to recover his filing fee as a cost taxed to plaintiffs. With no other information, we affirm the supplemental judgment for the deferred filing fee.

General judgment reversed; supplemental judgment affirmed.

---

[4] Under certain circumstances, a licensee may be subject to discipline and a civil penalty for knowingly assisting an unlicensed person to act in violation of ORS chapter 701. ORS 701.098(1)(c). That issue is not before us.